# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALD K. ACHOLONU | No. 12-CR-10068-RGS |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Gerald Acholonu, respectfully submits the following memorandum to assist the Court with sentencing.

On March 28, 2013, Mr. Acholonu pled guilty to the first two counts of a three-count indictment charging credit card fraud, in violation of 18 U.S.C. § 12029(a)(5) (count one), and obstruction of correspondence, in violation of 18 U.S.C. § 1702 (count two). The charges arise from Mr. Acholonu's theft of credit cards from the U.S. Mail. Count three, charging aggravated identity theft, in violation of 18 U.S.C. § 1028A, is to be dismissed at sentencing pursuant to the plea agreement.

There is no disputing that the offenses at issue here are serious. The conduct is as inexplicable as it is inexcusable. Mr. Acholonu is a well-educated man and should have known better. For years, he had worked diligently for various aviation services contractors, apparently without incident. Eventually, however, escalating substance abuse and frustration at being unable to make ends meet and to find work commensurate with his education led Mr. Acholonu to succumb to temptation in the conduct that gives rise to the charges here.

Notably, the charged offenses of conviction relate to 11 Discover credit cards actually tied to Mr. Acholonu by investigators (*e.g.*, found in his trash or used by him). As reflected in

the plea agreement, Mr. Acholonu does not dispute that, for sentencing purposes, he is also accountable for losses and intended losses as "relevant conduct" beyond the expressly charged credit cards on a preponderance of the evidence standard. However, as the government's version of offense conduct acknowledges — "he either stole, aided and abetted the theft of, or was part of a conspiracy to steal" — his role was not the singular or even necessarily the leading one with regard to that broader relevant conduct. Indeed, ATM surveillance depicted cards being used by persons other than Mr. Acholonu.

For the reasons that follow, the defense submits that a sentence of imprisonment for 48 months (the "floor" permitted under the plea agreement), followed by three years of supervised release, and restitution, is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

## **Background**[1]

Mr. Acholonu was born in Nigeria, later naturalized as a U.S. Citizen, and is now 33 years old. Mr. Acholonu was raised by his parents in a small village in Nigeria. While his upbringing was relatively comfortable by local standards, Mr. Acholonu experienced the deaths of many family members and was never able to process those experiences because the subject was taboo.

When Mr. Acholonu was 13 years old, he moved to Vicksburg, Mississippi to reside with his eldest brother and an uncle. He experienced difficulties in school due to a stutter. He moved to Boston in 1998 to attend college and ultimately earned a degree in business administration from U. Mass. Boston in 2004.

---

[1] The Presentence Report prepared by Probation contains a more extensive, comprehensive personal history that is not repeated here.

**Argument**

Mr. Acholonu submits that the proposed sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing." 18 U.S.C. § 3553(a).

The Court is required to compute the Guideline Sentencing Range ("GSR") as a "starting point and the initial benchmark." *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Here, there is no dispute that the properly-calculated GSR is 57 to 71 months imprisonment (level 25, CHC I).

However, the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not presume that the Guidelines range is reasonable" and must "make an individualized assessment based on the facts presented." *Id.* at 596-7. Indeed, "the Guidelines are only one of the factors to consider . . . and 3553(a) directs the judge to consider sentences other than imprisonment." *Id.* at 602 (emphasis added). The Supreme Court later emphasized again that the "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) (emphasis in original).

Thus, district courts are now permitted, indeed, directed to consider whether the Sentencing Commission's underlying policy results in a sentence that is unreasonably high. *See United States v. Kimbrough*, 128 S.Ct. 558, 575 (2007); *United States v. Boardman*, 528 F.3d 86 (1st Cir. 2008); *United States v. Martin*, 520 F.3d 87, 93-94 (1st Cir. 1998).

The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In *Rodriguez*, the First Circuit stressed that the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *Id.* at

228.  That overarching principle is to "impose a sentence sufficient but not greater than necessary."  *Id*.  In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is <u>minimally sufficient</u> to achieve the broad goals of sentencing."  *Id.* (emphasis added).

### A.   The Guideline Range Is Excessive and Not Rationally Connected to Sentencing Goals.

The structure of the "fraud" guideline, section 2B1.1, and the decision to employ notions of loss to measure culpability have long been criticized. *See, e.g., United States v. Emmenegger*, 329 F. Supp. 2d 416, 427-28 (S.D.N.Y. 2004) (fraud guidelines "place undue weight on the amount of loss involved in the fraud," which is "a relatively weak indicator of the moral seriousness of the offense or the need for deterrence"); *United States v. Parris,* 573 F. Supp. 2d 744 (E.D.N.Y. 2008) (concluding that the fraud guidelines "have run so amok that they are patently absurd on their face" and imposing a sentence 25 years below the low end of the guidelines); *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) ("inordinate emphasis" on loss as measure of culpability unexplained by Sentencing Commission); *United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) ("One of the primary limitations of the guidelines, particularly in white-collar cases, is their mechanical correlation between loss and offense level.").

In particular, the Sentencing Commission has never justified the rapid 2-level upward ratchet sequence at relatively low levels of loss (there are five two-level increments below $120,000) as compared to the much slower escalation when loss numbers become truly enormous (only a 2-level increase when loss rises from $1 million to $2.5 million). The resulting high guideline sentencing ranges with weak unexplained correlations to the sentencing goals of section 3553(a) have been exacerbated by the "unplanned upward drift" of sentences generated by both perceived and specific directives of Congress. *See Frank O. Bowman III, Pour*

*Encourager Les Autres*, 1 Ohio State J. Crim. L. 373, 387 (2004).   This effect is magnified here by the Guidelines' policy of pegging loss based on credit at risk (over $400,000) rather than actual loss (just under $184,000).

Sentencing Commission data also reflect what can only be described as broad judicial discomfort with guideline sentences in fraud cases. In 2010, for example, above-guideline sentences were imposed in just 2.3 percent of fraud cases, within-guideline sentences imposed in 55.5 percent of fraud cases, with the rest – more than 40 percent – below the guideline range. *See* Table 27A available at <http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/SBTOC10.htm>. With regard to the degree of decrease, Commission statistics show a median fraud sentence of 12 months, a median decrease of 9 months, and a median percentage decrease of 41.3 percent. *See id.,* Table 31A.

Various sentences imposed by courts in this district echo these national trends. *See, e.g., United States v. Bernard,* 10-CR-10307-JLT (sentence of probation where union officer embezzled more than $120,000, facing a GSR of 24-30 months (level 17, CHC I)), *United States v. Douglas*, No. 10-CR-10420-GAO (sentence of probation <u>after trial</u> on fraud charges in which defendant testified, facing GSR of 21-27 months (level 16, CHC I)); *United States v. Boamah*, No. 10-CR-40028-FDS (sentence of probation in mortgage fraud with $280,000 loss, facing GSR of 18-24 months (level 15, CHC I)); *United States v. Millet*, No. 09-CR-10195-NG (government agreed to probation sentence were defendant stole over $66,000 in Social Security benefits).

    **B.**    **The Proposed Sentence Serves the Sentencing Goals of Section 3553(a) while a Sentence Exceeding Four Years of Incarceration Would Be Unnecessary and Counterproductive.**

The proposed sentence is a substantial penalty that adequately reflects the seriousness of

the offenses of conviction, will promote respect for the law, and provide just and sufficient punishment as required by section 3553(a)(2)(A). While it is easy to become inured to enormous sentences in the federal system, a federal felony conviction resulting in four years of incarceration followed by three years of supervision is quite severe, particularly for a non-violent offense by an individual with minimal criminal history.

Reflexive deference to the advisory guideline range makes little sense in the circumstances. Indeed, many commentators and judges have recognized that the fraud guideline fails to measure a host of factors that may be important, and may be a basis for mitigating punishment. *See* Allan Ellis, John R. Steer, Mark Allenbaugh, *At a Loss for Justice: Federal Sentencing for Economic Offenses*, 25 CRIM. JUST. 34, 37 (2011); *see also United States v. Ovid*, 2010 WL 3940724 (E.D.N.Y. Oct. 1, 2010) ("[T]he fraud guideline, despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so.").

A departure/variance is warranted for the following additional reasons that are not taken into account by the guideline range.

   1.     **The Proposed Sentence Will Facilitate Restitution**.

In determining the appropriate sentence, the Court must consider "the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a)(7). *See United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of Defendant's offense . . .is better served by a non-incarcerated and employed defendant."); *United States v. Peterson*, 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis. 2005) (granting variance so that defendant could work and pay restitution).

While the restitution obligation here is very large, Mr. Acholonu is young, well-educated, and has the potential to pay that money back and make a stable life for himself and his children. However, with every year of incarceration, Mr. Acholonu's employment prospects upon release become dimmer. It would be highly beneficial to commence repayment efforts sooner rather than later.

### 2. Additional Marginal Periods of Incarceration Do Not Promote Deterrence.

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME & JUST. 1, 28 (2006); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

### Conclusion

For the foregoing reasons, this Court should impose a sentence as set forth above. In addition, the court should recommend Mr. Acholonu to the BOP 500-hour "RDAP" substance abuse treatment program in light of Mr. Acholonu's long documented history of poly-substance abuse.

Respectfully submitted,

- 8 -

                                      GERALD K. ACHOLONU
                                      by his attorney

                                      /s/ William W. Fick
                                      William W. Fick, Esq.
                                      B.B.O. No. 650562
                                      FEDERAL PUBLIC DEFENDER OFFICE
                                      51 Sleeper Street, 5th Floor
                                      Boston, MA 02210
                                      617-223-8061
                                      WILLIAM_FICK@FD.ORG

- 9 -

## Certificate of Service

    I, William Fick, hereby certify that I have served a copy of this document by e-mail PDF upon all counsel of record and U.S. Probation on July 15, 2013.

/s/ William W. Fick  
William W. Fick, Esq.
